FILED
COURT OF APPEALS
DIVISION II

2014 JUN 24 AM 9: 05

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KEVIN ANDERSON, | No. 44388-1-II |
| Appellant, | |
| v. | |
| CHARLES HAMON, M.D., | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Kevin Anderson appeals the jury's verdict finding Dr. Charles Hamon was not negligent in Anderson's care. Anderson argues that the trial court erred in admitting evidence of his past drug use for the purposes of proving contributory negligence. We hold that the trial court did not abuse its discretion by admitting the evidence under ER 401 and ER 403. We affirm.

### FACTS

### I. BACKGROUND

Anderson began dating Jennifer Ray in September 2005, while they both lived in Hawaii. In February 2006, Anderson moved in with Ray. Shortly after, Anderson began complaining about being sick. On March 21, 2006, Anderson went to urgent care with a headache and congestion. The urgent care center diagnosed Anderson with a sinus infection and prescribed antibiotics. On March 22, Anderson began suffering from a severe headache, nausea, vomiting,

and photophobia. Anderson went to the emergency room. The emergency room performed a CT scan, determined that he had a severe sinus infection, and sent him home to continue his antibiotics.

Over the next several weeks, Anderson's congestion improved, but his headache never fully resolved. On May 4,, Anderson and Ray flew from Hawaii to Arizona to visit friends. During the trip to Arizona, Anderson's condition declined. He was tired and had a severe headache, photophobia, anorexia (loss of appetite), nausea, and vomiting. After a few days in Arizona, Ray and Anderson flew to Seattle to visit Ray's family on Bainbridge Island. Anderson's condition continued to worsen. During the first two days on Bainbridge Island, Anderson stayed in bed the entire time, did not eat, and continued to experience a severe headache and photophobia.

On the morning of May 11, Ray convinced Anderson to see a doctor. Ray drove Anderson to see Dr. Hamon. Hamon performed a physical examination, took a medical history, and performed a neurological exam. Anderson presented with a severe headache, photophobia, malaise, anorexia, nausea, fever, and chills. Hamon diagnosed Anderson with a chronic sinus infection and gave him another course of antibiotics, a decongestant, and pain medication. Ray brought Anderson home, and he returned to bed. The next morning, Ray spoke with Anderson at approximately 9:30 before leaving the house to spend the day with her mother and sister. Ray returned home at 6:30 PM and checked on Anderson. Ray heard Anderson snoring and decided to let him stay asleep. At 7:30 PM Ray attempted to wake Anderson, but he did not wake up; Ray thought he was "knocked out" from the pain medication. At approximately 8 PM, Ray attempted

to wake Anderson, but he was unresponsive. Ray's sister called 911, and the responding medical personnel airlifted Anderson to Harborview Medical Center.

At Harborview, Anderson was diagnosed with a brain abscess. The CT scan revealed a 7 cm abscess (roughly the size and volume of a baseball). Anderson had an initial craniotomy to drain the abscess, a sinus surgery, and a subsequent craniotomy. Eventually, Anderson regained consciousness and began physical therapy. Anderson was discharged from Harborview on July 4, 2006. Anderson has permanent injuries resulting from his brain surgeries, including loss of use of his right hand, blindness, and cognitive impairments.

## II. PROCEDURE

On January 13, 2010, Anderson filed a medical malpractice claim against Hamon, alleging that Hamon breached the standard of care by failing to refer Anderson to a specialist or an emergency room for further treatment. Hamon denied the allegation and pled contributory negligence as an affirmative defense. Prior to trial, Anderson filed a motion in limine to exclude any evidence related to Anderson's history of drug use. Hamon argued that Anderson's drug use, particularly cocaine and methamphetamine, were relevant to a defense of contributory negligence.[1] The trial court allowed Hamon to introduce evidence of Anderson's cocaine and methamphetamine use as it relates to the cause of Anderson's brain abscess. During the trial, Anderson continued to raise his objection to the admissibility of any evidence of his drug use.

At trial, Ray testified that Anderson told her he had used drugs including cocaine, but that Anderson did not use drugs while they were together. Dr. Michael Kovar, one of Hamon's

---

[1] In an action based on fault seeking to recover damages for injury or death to a person, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery. RCW 4.22.005.

experts, testified that Anderson's charts from Harborview noted cocaine use and that use of cocaine and methamphetamine can contribute to the development of a sinus infection and brain abscess.

Anderson presented expert testimony from several doctors who testified that Hamon breached the standard of care by failing to refer Anderson to a specialist, to the emergency room, or for a CT scan. Hamon, on the other hand, presented expert testimony of several doctors who testified that Hamon did not breach the standard of care.[2]

The trial court specifically instructed the jury as to Hamon's affirmative defense of contributory negligence:

> In addition, [Hamon] claims as an affirmative defense that the plaintiff was contributorily negligent in one or more of the following respects:
>
> - By drugs that ultimately caused the sinusitis that escalated into a large brain abscess over the course of several months, causing substantial injuries.

Clerk's Papers (CP) at 619. The jury was given a special verdict form that asked: "Was defendant Charles Hamon, M.D. negligent in his care of plaintiff Kevin Anderson?" CP at 636. The jury answered "[N]o." CP at 636. The jury did not reach the additional questions regarding proximate cause, Anderson's damages, and Anderson's contributory negligence. Anderson appeals.

## ANALYSIS

Anderson argues that the trial court erred by admitting the evidence of his past drug use because it was irrelevant under ER 401 and unfairly prejudicial under ER 403. The evidence of

---

[2] It appears that Anderson and Hamon each called four doctors but the record before us on appeal does not include all of the trial testimony from each doctor.

4

Anderson's drug use was relevant to support Hamon's theory of contributory negligence; therefore, the evidence was properly admitted under ER 401. In addition, the probative value of the evidence was not substantially outweighed by any prejudice resulting from the admission of the evidence under ER 403.

We review a trial court's evidentiary rulings for an abuse of discretion. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 728, 315 P.3d 1143 (2013), *review denied*, 180 Wn.2d 1011 (2014). "Therefore, we will overturn the trial court's ruling on the admissibility of evidence only if its decision [is] manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons." *Mut. of Enumclaw*, 178 Wn. App. at 728. Only relevant evidence is admissible. ER 402. "Relevant evidence has any tendency to make a fact of consequence more likely or less likely; this definition sets a low threshold." *Gorman v. Pierce County*, 176 Wn. App. 63, 84, 307 P.3d 795 (2013) (citing ER 401), *review denied*, 179 Wn.2d 1010 (2014). The trial court may exclude relevant evidence if the probative value of the evidence is outweighed by the risk of unfair prejudice. ER 403.

Here, evidence of Anderson's drug use was relevant to Hamon's contributory negligence defense. Specifically, the evidence regarding Anderson's use of drugs ingested through nasal passages was relevant to whether Anderson's drug use caused or contributed to his sinusitis or the development of his brain abscess. Therefore, we hold that evidence of Anderson's drug use meets the standard for relevant evidence in ER 401 and is presumed admissible under ER 402.

But, Anderson argues that the evidence of his drug use was so prejudicial that it should have been excluded under ER 403. We disagree.

In certain circumstances, improperly admitted evidence can result in enduring prejudice that requires reversal. For example, in *Bertsch v. Brewer*, the trial court erroneously admitted the plaintiff's unfavorable psychological profile. 97 Wn.2d. 83, 85-87, 640 P.2d 711 (1982). Although the evidence was admitted for the purposes of damages, an issue the jury never reached, the appellate court stated:

> The derogatory description of [the plaintiff] undoubtedly prejudiced the jurors as to [the plaintiff's] credibility, which reflected directly on many crucial issues, including informed consent, the causal relationship between [the defendant's] treatment and [the plaintiff's] recurring symptoms, and contributory negligence.

*Bertsch*, 97 Wn.2d at 88. Because the improper evidence was so damaging to the plaintiff's credibility, the court held that its improper admission was reversible error. But here, Anderson's credibility was never an issue.[3] Furthermore, the limited evidence that was admitted did not present a particularly derogatory description of Anderson. Rather, the evidence simply established that in December 2005, Anderson had used drugs while staying with his parents and there was a note in his Harborview medical file stating that someone had reported Anderson was a daily drug user. Therefore, any prejudicial effect of the evidence related to Anderson's past drug use cannot be said to be so enduring that reversal is required.

Thus, while there is always a risk that evidence will result in some prejudice to one party or the other, the record does not support Anderson's claim that any probative value of the evidence as to the cause of Anderson's sinusitis or brain abscess was substantially outweighed by the unfair prejudice resulting from the limited evidence regarding his drug use. Accordingly, we

---

[3] Anderson testified that he could not remember anything from the time he and Ray left Maui until he was in physical therapy three to four weeks after being admitted to Harborview.

No. 44388-1-II

hold that the trial court did not abuse its discretion in admitting the limited evidence regarding

Anderson's drug use.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.60.040, it is so ordered.

Lee, J.

We concur:

Hunt, J.

Bjorgen, A.C.J.